UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MILE ZUPAN,

        Plaintiff,         Civil No. 04-1402-HA

        v.         OPINION AND ORDER

COMMISSIONER of Social Security,

        Defendant.

---

Merrill Schneider
P.O. Box 16310
Portland, Oregon 97292

Linda S. Ziskin
4800 SW Meadows Road, Suite 300
Lake Oswego, Oregon 97035
        Attorneys for Plaintiff

Karin J. Immergut

1 – OPINION AND ORDER

United States Attorney
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

David J. Burdett
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff brings this action pursuant to § 205(g) of the Social Security Act (SSA), as amended, 42 U.S.C. §§ 405(g), 1383(c)(3). He seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

For the reasons provided below, the court concludes that the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed and this case is remanded for an award of benefits.

**ADMINISTRATIVE HISTORY**

Plaintiff filed an application for DIB and SSI on May 31, 2002. Administrative Record (AR) 67, 249. Plaintiff alleges disability due to severe coronary artery disease (CAD) and degenerative disc disease in his lower back, for a period from October 9, 2001, through March 3, 2003. AR 140, 270. Plaintiff's application was denied initially and upon reconsideration. A hearing was held before an administrative law judge (ALJ) on December 1, 2003. AR 15, 270–82. The ALJ issued a decision on January 5, 2004, finding plaintiff not disabled under the

2 – OPINION AND ORDER

SSA. AR 12–22. On July 30, 2004, the Appeals Council denied plaintiff's request for review (AR 6–8), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210. Plaintiff sought judicial review in this court.

**FACTUAL BACKGROUND**

Plaintiff was forty-two years old at his alleged disability onset date. AR 20. He has a high school education and past relevant work experience as a truck driver. AR 20. He premises disability on severe CAD and degenerative disc disease in his lower back. Specifically, he alleges a period of disability lasting from October 9, 2001, through March 3, 2003, when he returned to work as a truck driver. AR 140, 270.

Plaintiff worked as a truck driver until October 9, 2001, when he suffered a myocardial infarction. Doctors discovered diffuse, three-vessel CAD with severe stenosis,[1] and performed cardiac catheterization and coronary angioplasty, followed by stenting.[2] AR 166, 173. Doctors described "ongoing diffuse disease with vessels that appear to be too small and the disease too diffuse for stenting and without targets compatible for coronary artery bypass surgery." AR 157. Although plaintiff hoped to return to work, cardiac testing revealed that he could not meet the criteria for a commercial driver's license. *Id.* Plaintiff was assigned three months of cardiac

---

[1] Stenosis is defined as a "stricture of any canal; especially, a narrowing of one of the cardiac valves." *Stedman's Medical Dictionary* 1673 (26th ed. 1995). Thus, plaintiff's "severe stenosis" resulted in severe narrowing of several coronary arteries, "the circumflex, distal right coronary artery, posterior descending artery, and the first diagonal branch." AR 166, 176.

[2] Angioplasty is "[r]econstitution or recanalization of a blood vessel; may involve balloon dilation . . . ." *Stedman's Medical Dictionary* 87 (26th ed. 1995). A stent is a "[s]lender thread, rod, or catheter, lying within the lumen of tubular structures, used to provide support during or after their anastomosis, or to assure patency of an intact but contracted lumen." *Id.* at 1674. Plaintiff underwent balloon angioplasty followed by stenting of his left anterior descending coronary artery (LAD). AR 173.

3 – OPINION AND ORDER

rehabilitation, including some light walking, but specifically excluded returning to work, driving, sexual activity, or lifting greater than five pounds. AR 166–67.

Plaintiff had a second heart procedure on February 13, 2002, after suffering chest pains. He underwent successful catheterization, balloon angioplasty, and stenting of several coronary arteries. AR 150–51. The procedure confirmed several areas of diffuse disease not amenable to intervention, and disclosed "in-stent restenosis"—re-narrowing of the vessel stented immediately after plaintiff's heart attack—which doctors reopened at that time. AR 151–52.

Plaintiff visited Peter F. Banitt, M.D. on March 27, 2002. Doctor Banitt opined that plaintiff's heart condition did not appear to impose any functional limitations, and that he could return to work but should not engage in sustained vigorous physical activity. AR 153. At the hearing, plaintiff asserted that Dr. Banitt had merely asked him how he felt, and upon learning that plaintiff felt well, released him to work without further examination. AR 276–77. However, the record shows that Dr. Banitt did examine plaintiff. AR 153.

The following day, March 28, 2002, plaintiff sought a second opinion from Naveen Sachdev, M.D., a specialist in cardiovascular diseases. AR 225. Doctor Sachdev concluded that "at this point I feel he could go back to work if clinically he is doing quite well," but that he wanted to review the angiograms from both of plaintiff's procedures to assess his condition and determine whether the diffusely diseased areas were amenable to intervention. AR 226. No records confirm whether plaintiff was "doing quite well" clinically, but on April 30, 2002, plaintiff consented to further coronary intervention in two stages. AR 212.

On May 8, 2002, Dr. Sachdev performed a third successful cardiac catheterization, angioplasty, and stenting of three coronary arteries, all diffusely diseased. AR 222–24. On

August 14, 2002, plaintiff underwent a fourth procedure of catheterization, angioplasty, and stenting, during which Dr. Sachdev found additional diffuse disease and continuing restenosis of previously stented vessels, including an area of ninety-nine percent in-stent restenosis. AR 219–21. Although this procedure was also successful, Dr. Sachdev noted several remaining abnormalities and that some vessels were not completely reopened. Doctor Sachdev's notes from this fourth and final procedure show that plaintiff still experienced shortness of breath on exertion, fatigue, tiredness, and lightheadedness. AR 217. Doctor Sachdev noted that plaintiff was scared "to do too many things because of these symptoms." Id.

Between plaintiff's third and fourth cardiac procedures, Dr. Sachdev treated him for recent foot, hip, thigh, and low back pain. AR 210. Doctor Sachdev gave plaintiff a referral for further diagnosis and prescribed Vicodin, which plaintiff discontinued because it "was too strong for him." Id. On August 22, 2002, a computed tomography (CT) scan of plaintiff's spine revealed several abnormalities, including severe degenerative disc changes, and spinal stenosis, with a possible herniated disc. AR 214. After an examination on November 11, 2002, Dr. Sachdev stated that plaintiff "has continued to do reasonably well. He is now starting to exercise . . . although there are days when he cannot do much. The back is sometimes a bigger issue[] than the shortness of breath." AR 21.

During an examination on January 28, 2003, Dr. Sachdev found the results of diagnostic testing "suggestive but not diagnostic of ischemic heart disease . . . . [I]t is difficult to comment on these findings." AR 209. Plaintiff returned to work on March 3, 2003. AR 140.

Frank McBarron, M.D., an internist, testified at the Commission's hearing as a medical expert. He testified that, based on plaintiff's performance on exercise stress tests, his CAD did

not meet or equal any listed cardiovascular impairment. AR 282–83. He also stated that the record contained insufficient development of the functional limitations and treatment associated with plaintiff's spinal stenosis and degenerative disc disease to determine whether plaintiff met or equaled any listing for musculoskeletal impairments. AR 284.

## QUESTIONS PRESENTED

Plaintiff asserts that the ALJ erred in: (1) failing to develop a full and fair record; (2) failing to take vocational testimony, and therefore improperly applyied the Medical-Vocational Guidelines; (3) improperly rejecting the opinion of plaintiff's treating physician and other evidence in the record; (4) failing to consider plaintiff's impairments in combination; and (5) depriving plaintiff of procedural due process. Because the court finds that the ALJ failed to properly consider the evidence in the record and erroneously applied the Medical-Vocational Guidelines, the court need not address plaintiff's other arguments.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person can be disabled only if his or her impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The Commissioner bears the burden of

developing the record. 20 C.F.R. §§ 404.1512(d), 416.912(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for disability benefits. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). If a determination that the claimant is or is not disabled can be made at any step, further review is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Below is a summary of the five steps:

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not working in a substantially gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 416.920(a)-(b).

Step Two. The Commissioner determines whether the claimant has a severe mental or physical impairment. If not, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration regulations. 20 C.F.R. pt.404, subpt.P, app. 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. The ALJ examines the claimant's residual functional capacity and

7 – OPINION AND ORDER

the physical and mental demands of the claimant's past relevant work. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). A claimant must be able to perform his or her past relevant work either as actually performed, or as generally performed in the national economy. 20 C.F.R. § 416.920(e). If the claimant is able to perform the work, the claimant is not disabled. If the claimant demonstrates that he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds to Step Five. *Id.*

Step Five. The Commissioner determines whether the claimant is able to do any other work. If not, the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs in the national economy exist that the claimant can perform. The Commissioner may satisfy this burden through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines. 20 C.F.R. pt.404, subpt.P, app.2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that claimant can perform, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(f).

The burden of proof is on the claimant as to Steps One through Four. *Tackett*, 180 F.3d at 1098. As noted above, however, at Step Five, the Commissioner bears the burden of showing that the claimant can perform jobs that exist in significant numbers in the national economy. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett,* 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40. However, a decision supported by substantial evidence still must be set aside if the Commissioner failed to apply the proper legal standards in weighing the evidence and making the decision. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998).

## DISCUSSION

The ALJ found that plaintiff had not engaged in substantial gainful activity during the alleged period of disability (step one), and that plaintiff had the severe impairments of CAD and degenerative disc disease (step two). AR 16, 17. At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment. AR 17–18. At step four, the ALJ concluded that plaintiff's RFC limited him to sedentary work, which precluded performing his past relevant work of driving trucks during the alleged period of disability. AR 19. At step five, applying the Medical-Vocational Guidelines ("the Grids"), the ALJ found that significant numbers of jobs existed in the national economy that plaintiff could perform. AR 20. Therefore, the ALJ concluded that plaintiff was not disabled under the SSA. *Id.* Although a vocational expert sat through the hearing and was available to testify, the ALJ did not elicit his testimony.

1. The ALJ's RFC Determination

9 – OPINION AND ORDER

The ALJ determined that plaintiff retained the RFC to sit six hours out of an eight-hour day, suffered from no non-exertional limitations, and could perform the full range of sedentary work. AR 19. In making this RFC determination, the ALJ credited the opinions of non-examining state agency consultants and medical expert Frank McBarron, M.D., an internist. AR 18, 19. The ALJ rejected the opinion of Dr. Sachdev. AR 19.

The state agency consultants opined that plaintiff could sit for "about 6 hours out of an 8-hour workday," and that plaintiff had no environmental limitations. AR 193, 195. Doctor Sachdev, on the other hand, opined in a check-box questionnaire that plaintiff could sit "[f]ewer than 6 hours out of an 8-hour workday" and declined to mark "about 6 hours in an 8-hour workday." AR 247. Doctor Sachdev also assessed numerous environmental limitations - that plaintiff should avoid frequent exposure to extreme heat, cold, or humidity, and should avoid even occasional exposure to wetness, noise, and vibration. AR 247-48. The ALJ rejected this assessment, stating that "there is no evidence" to support Dr. Sachdev's opinions about plaintiff's environmental and sitting limitations. AR 19.

To properly reject the opinion of an examining physician that is contradicted by another physician, an ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record. *Holohan v. Massanari*, 246 F.3d 1195, 1202–03 (9th Cir. 2001). Doctor Sachdev's opinion is entitled to greater weight than the consulting physicians, both because he is plaintiff's treating physician and a cardiovascular specialist. 20 C.F.R. §§ 404.1527(d)(1), (d)(5), 416.927(d)(1), (d)(5). While Dr. Sachdev did not elaborate on his assessment of plaintiff's environmental and sitting limitations in the questionnaire itself, the record contains numerous observations and findings in support of his assessment. *See* AR 206, 210–11, 219. The amount

of documented medical evidence supporting a physician's opinion is a valid basis for evaluating the weight of that opinion. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

The opinion of a non-treating, non-examining physician may constitute substantial evidence to reject the opinion of a treating physician where it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Here, the record contains virtually no support for the consultants' opinions.[3] Given Dr. Sachdev's long-term treatment relationship with plaintiff, and the other evidence supporting his assessment of plaintiff's exertional limitations, the absence of a specific explanation on the questionnaire, without more, is not a legitimate basis for rejecting Dr. Sachdev's opinion.

The ALJ also erred in using the Grids because they lack the vocational limitation caused by the occupational absences required for plaintiff to recover from his heart attack and four coronary procedures. Doctor McBarron testified that many patients return to work within one week after undergoing balloon angioplasty and stenting, but did not have an opinion on whether plaintiff could have done so. AR 286. Doctor McBarron also stated that "it's prudent for [plaintiff] to rehabilitate himself and certainly treat himself in a very aggressive fashion, because this is a - he has a treatable problem. Has two treatable problems as a matter of fact, I think. I know he has one. His heart disease is absolutely treatable." AR 288. Without discussion, the ALJ apparently found Dr. McBarron's testimony sufficient to establish that plaintiff's four heart

---

[3] The only evidence possibly in conflict with Dr. Sachdev's opinion was plaintiff's performance on an exercise stress test, in which he walked on a treadmill for forty-five minutes at up to four miles per hour without chest pain, pressure, or shortness of breath. AR 153. The ALJ adopted the medical expert's opinion that this test demonstrated plaintiff's ability to perform all sedentary work activities. *See* AR 18, 284–85. The ALJ did not explain how plaintiff's ability to exercise was inconsistent with plaintiff's environmental limitations or his inability to sit for six hours per workday, a significant failure given plaintiff's combination of back pain and CAD.

11 – OPINION AND ORDER

procedures within a ten-month period would not have required, individually or collectively, a vocationally relevant period of missed work.

The substantial weight of the evidence suggests otherwise. All of plaintiff's treating physicians were consistent in advising him not to work. After plaintiff's first procedure, his three months of cardiac rehabilitation precluded working and severely restricted all other physical activity. AR 166–67. Before plaintiff's final procedure, Dr. Sachdev stated that the severity and early onset of plaintiff's CAD, combined with his foot, hip, and back pain, rendered him unable to work. AR 210. Several days later, Dr. Sachdev clarified that plaintiff's residual risk of "atrial fibrillation and/or myocardial infarction, especially with strenuous work load," and his severe back pain caused by degenerative spinal stenosis, made him "not suitable to go back to work until further notice." AR 206. Finally, Dr. Sachdev endorsed a questionnaire item indicating that, to a reasonable medical certainty, plaintiff "would have been unable to engage in work activity" due to CAD during the alleged period of disability. AR 246.

Without addressing the three month period of cardiac rehabilitation, the ALJ rejected the statements of Dr. Sachdev on the basis that plaintiff's ability to return to work involved "vocational issues of which he has no expertise." AR 19. The ultimate determinations of RFC and disability are issues reserved to the Commissioner, and the ALJ was not required to give special weight to physicians' opinions on these issues. *See* 20 C.F.R. § 404.1527(e). Nevertheless, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . [the] decision must explain the consideration given to the treating source's opinion(s)." Social Security Ruling (S.S.R.) 96-5p.

The ALJ's explanation consisted of a statement that Dr. Sachdev had no expertise in

vocational matters. Further, the opinion of a treating physician that plaintiff should not return to work due to his medical condition is a statement of a medical nature. Thus, to the degree Dr. Sachdev's statements were opinions on the ultimate issue of disability, the ALJ should have recontacted him for clarification on the degree to which plaintiff's impairments limited his ability to perform sedentary work. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); *see also* S.S.R. 96-5p (the adjudicator will "make every reasonable effort to recontact [medical] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear"). Instead of recontacting Dr. Sachdev, the ALJ offered a cursory explanation for rejecting his statements.

Moreover, Dr. McBarron's assertion that plaintiff's heart disease was "absolutely treatable" conflicted with the opinions of Dr. Sachdev and every other treating physician, each of whom noted plaintiff's diffuse areas of disease not amenable to treatment and his non-candidacy for bypass surgery. *See* AR 151, 156, 176 (opinions of Drs. Kathy Grewe, Neshe E. North, and Eli Rosenthal). The record also shows that during two of the four procedures, doctors found restenosis of previously stented vessels. AR 150, 220. A non-examining physicians' conclusion, without more, does not constitute substantial evidence, particularly in the face of contrary observations and conclusions of a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 503 n.3 (9th Cir. 1990) (citing *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984)). The clear import of the treatment records was that plaintiff's CAD was not "absolutely treatable," and Dr. McBarron's testimony was insufficient evidence to support the ALJ's conclusion that plaintiff would need no significant vocational absences due to his heart condition.

The court concludes that the ALJ's determination that plaintiff could perform all

13 – OPINION AND ORDER

sedentary job activities is not supported by substantial evidence.

2.    The ALJ's Use of the Medical-Vocational Guidelines

At step five in the sequential evaluation process, the ALJ bears the burden of showing that significant numbers of jobs the claimant can perform exist in the national economy. *Gomez*, 74 F.3d at 970. The ALJ may satisfy this burden through vocational expert testimony or by reference to the Grids, 20 C.F.R. pt.404, subpt.P, app. 2. The Grids are a set of tables that the ALJ may use to direct a finding of disabled or not disabled once the claimant's RFC is determined.

The ALJ must categorize the claimant's maximum sustained physical ability to perform job duties. The Grids direct disability determinations for the categories of "sedentary," "light," and "medium" work, as these terms are defined in the Department of Labor's Dictionary of Occupational Titles and in 20 C.F.R. §§ 404.1567, 416.967. Then, referring to the claimant's physical ability, age, education, and work experience, the ALJ uses the Grids to determine whether the claimant is considered disabled.

The use of the Grids to direct a finding of not disabled is justified only where the Grids "accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir.1985). The Grids may be applied only where the claimant can perform the complete range of job activities required by a given category of maximum sustained physical ability. 20 C.F.R. pt.404, subpt.P, app. 2, § 200(e); *Tackett*, 180 F.3d at 1102. The claimant must not have any impairments of a non-exertional nature that further limit the available range of jobs. Examples of non-exertional impairments are mental, sensory, postural, manipulative, and environmental limitations, as well as pain. *Tackett*, 180 F.3d at 1102;

*Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 57, 579 (9th Cir. 1988) (Pregerson, J., concurring).

After determining plaintiff's RFC, the ALJ found that plaintiff could perform the full range of sedentary job activities. AR 20. The ALJ then applied the Grids, specifically Rule 201.28, to direct a conclusion of not disabled. *Id*; *see* 20 C.F.R. pt.404, subpt.P, app. 2, § 201.28. As discussed above, the determination of plaintiff's RFC was flawed. Plaintiff suffered additional sitting, environmental, and attendance limitations not contemplated by the Grids. Accordingly, it was legal error to apply them. *See Tackett*, 180 F.3d at 1102; 20 C.F.R. pt.404, subpt.P, app. 2, § 200(e).

3.  Remand for Further Proceedings or an Award of Benefits

Whether to remand for further proceedings or to remand for an award of benefits is a matter within the discretion of this court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.). The issue turns on the likely utility of further proceedings. Improperly rejected evidence should be credited and an immediate award of benefits directed where there are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

The crux of the ALJ's decision was that, although plaintiff had shown he was unable to work as a truck driver during the alleged period of disability, no evidence showed plaintiff could not perform sedentary work. Sedentary work primarily involves sitting, although some walking and standing may be necessary. 20 C.F.R. §§ 404.1567(a), 416.967(a). As discussed above, the ALJ improperly disregarded Dr. Sachdev's assessment that plaintiff could sit less than six hours per eight-hour workday. *See* AR 247. Thus, the court may credit his assessment as true.

Sedentary work also entails lifting no more than ten pounds at a time. 20 C.F.R. §§ 404.1567(a), 416.967(a). Plaintiff's initial three months of cardiac rehabilitation precluded plaintiff from returning to work and from lifting greater than five pounds. AR 166–67. The ALJ did not address this uncontradicted lifting restriction. Thus, the court may credit as true the evidence that, for three months of the alleged period of disability, plaintiff was unable to meet the minimum lifting criteria for sedentary work. Considering the environmental limitations and the pushing-pulling limitations previously discussed, and the fact that plaintiff experienced intermittent fatigue, shortness of breath, and lightheadedness throughout the alleged period of disability (AR 217), the court concludes that plaintiff's cardiac rehabilitation precluded him from performing even sedentary work during those three months.

The ALJ also rejected the statement of plaintiff's brother, John Zupan, that plaintiff was "laid up" for two to three weeks after each procedure, during which he was restricted from doing any kind of physical activity. AR 148. The ALJ's basis for rejecting John Zupan's statement was that it was not "indicative of an inability to perform sedentary activities." AR 18. The court concludes that uncontradicted evidence of a two to three-week restriction from virtually all physical activity is indicative of an inability to perform sedentary activities. The fact that doctors prescribed a three-month period of restrictive cardiac rehabilitation further supports John Zupan's statement that plaintiff could not engage in sedentary work after his coronary procedures. The ALJ's rejection of John Zupan's statements was improper. The court may therefore credit as true that plaintiff was unable to work for two to three weeks after each procedure.

Plaintiff alleges a period of disability of approximately sixteen months. In a span of just

over ten months, plaintiff had four coronary procedures. Plaintiff was unable to work during the three months after his first procedure. After each of the next three procedures, plaintiff was inactive for two to three weeks, a total of six to nine weeks. Plaintiff was unable to attend work due to recovery from his heart attack and coronary procedures for almost five months in total. During the remaining time, any employment would have been punctuated by frequent absences caused by his impairments.

Residual functional capacity is the "maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs." 20 C.F.R. pt.404, subpt.P, app. 2, § 200.00(c) (emphasis added); *see also* 20 C.F.R. §§ 404.1512(a), 404.1545(b), 416.912(a), 416.945(b). The Ninth Circuit has further emphasized the importance of a regular and continuing ability to work, noting that occasional symptom-free periods and even sporadic ability to work are not inconsistent with disability. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); *Reddick,* 157 F.3d at 724; *cf. Gatliffe v. Commissioner*, 172 F.3d 690 (9th Cir. 1999) (ability to perform successive jobs not lasting over two months each is not substantial gainful activity within the meaning of the SSA).

When the improperly rejected evidence is credited as true, it is clear that the jobs plaintiff could have performed during the period in question were restricted to the lightest of sedentary work. The evidence shows plaintiff was burdened by severe sitting, environmental, and manipulative limitations, was subject to repeated interruption by several heart procedures for a total of four to five months, and suffered ongoing fatigue, shortness of breath, and lightheadedness. Such severe erosion of the occupational base is sufficient to show disability within the meaning of the SSA. When all the improperly rejected evidence is credited as true,

the court concludes that no further development of the record is necessary and the evidence requires a finding of disability. *Harman*, 211 F.3d at 1178.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner finding plaintiff Mile Zupan not disabled is reversed. This action is remanded for payment of benefits calculated for the period from October 9, 2001 through March 3, 2003.

IT IS SO ORDERED.

DATED this __14___ day of October, 2005.

_/s/ Ancer L. Haggerty_____
Ancer L. Haggerty
United States District Judge